IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRES TECH CORPORATION, | § | |
| | § | |
| Petitioner/Plaintiff | § | |
| | § | |
| v. | § | No. 3:13-CV-4033-K |
| | § | |
| CAREFUSION CORPORATION, | § | |
| | § | |
| Respondent/Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion to Confirm Amended Arbitration Award (Doc. No. 1) filed by Tres Tech Corporation ("Tres Tech") and Cross-Motion to Vacate Award (Doc. No. 6) filed by Carefusion Corporation. The Court has reviewed the above motions, the briefing, the materials submitted by the parties, and the applicable law. The Court hereby **GRANTS** Tres Tech's Motion to Confirm Amended Arbitration Award (Doc. No. 1) and **DENIES** Carefusion Corporation's Cross-Motion to Vacate Award (Doc. No. 6).

## I.      Factual and Procedural Background

In 1995, Tres Tech entered into a Royalty Agreement ("the Agreement") with SensorMedics Critical Care Corporation ("SensorMedics"). The Agreement provided for royalty payments related to the sales and rentals of certain medical products that used High Frequency Ventilator technology developed by Tres Tech's predecessor. Carefusion Corporation, successor-in-interest to SensorMedics, tendered royalty

1

payments for several years leading up to May 2011. Alleging that the Agreement had expired, Carefusion Corporation ceased these payments in May 2011. Tres Tech and Carefusion Corporation were unable to agree as to when the Agreement terminated. Tres Tech filed a demand for arbitration seeking an award based on its claim that the Agreement was effective through March 17, 2018.

Tres Tech named Carefusion Corporation as the respondent in the arbitration proceeding. In its response to the demand for arbitration, Carefusion Corporation substituted Carefusion 202, Inc. in the case style and stated that Carefusion Corporation was wrongly named. However, the attorneys signed the response on behalf of Carefusion Corporation. The same attorneys represent both Carefusion Corporation and Carefusion 202, Inc. From then on, Carefusion Corporation's attorneys indicated that they were, in fact, representing Carefusion 202, Inc., not Carefusion Corporation. Following Carefusion Corporation's allegation that Carefusion 202, Inc. was the proper respondent party, Tres Tech named only Carefusion 202, Inc. in its response to Carefusion Corporation's counterclaims. At no time did Carefusion Corporation specifically request that the arbitration panel ("the Panel") dismiss Carefusion Corporation because it was not the proper party to the arbitration proceeding. At no time did Carefusion 202, Inc. seek to have itself substituted as the proper party.

At the conclusion of the arbitration, the Panel issued an award ("the Award") and styled its findings as an award in the arbitration of Tres Tech against Carefusion

Corporation. The Panel referred to the respondent as simply "Carefusion." In the last paragraph of the Award, the Panel expressly referred to Carefusion Corporation as the entity that was a party to the arbitration. The Award never expressly referred to Carefusion 202, Inc. Because of an ambiguity as to whether the Panel had ruled against Carefusion Corporation or Carefusion 202, Inc., this Court remanded the Award for clarification of that issue. *Tres Tech Corp. v. Carefusion Corp.*, No. 3:13-CV-1800-K, 2013 WL 4603329 (N.D. Tex. Aug. 29, 2013). On remand, the Panel issued a supplemental award ("the Supplemental Award"). The Supplemental Award clarifies that the Panel intended Carefusion Corporation as the proper party respondent and that the Panel had jurisdiction over Carefusion Corporation.

## II.    Carefusion  Corporation's Cross-Motion to Vacate is denied.

Tres Tech initiated this action by bringing its Motion to Confirm Arbitration Award. Tres Tech seeks to confirm the Award and Supplemental Award, to obtain post-award, prejudgment interest and post-judgment interest on the Award, and to have a final judgment entered against Carefusion Corporation.

In response, Carefusion Corporation filed a cross-motion to vacate the Award, arguing first that the Award should be vacated for lack of jurisdiction and second, that the Award should be vacated on any one of three substantive grounds. Carefusion Corporation argues that the Panel exceeded its authority to bind Carefusion Corporation to arbitration, because Carefusion Corporation did not sign an arbitration agreement and none of the available theories for binding non-

3

signatories recognized by the Fifth Circuit apply. Alternatively, Carefusion Corporation argues that if the Panel properly exercised jurisdiction over Carefusion Corporation, the Award should be set aside for any of the following reasons: (1) the Panel exceeded its authority because it ignored the contract and the applicable law in finding no patent misuse as alleged by Carefusion Corporation's counterclaim; (2) the Panel exceeded its authority by erroneously considering parol evidence; and (3) the Panel exceeded its authority by erroneously reforming the contract.

### A.    The Panel Properly Exercised Jurisdiction Over Carefusion Corporation.

Carefusion Corporation's first argument in support of its Motion to Vacate is that the Panel did not have jurisdiction over it. Carefusion Corporation claims that it was not a signatory to the Agreement; thus, it is not bound by the Agreement's arbitration clause. Though the Panel decided that it had jurisdiction to hear these claims, Carefusion Corporation argues that the District Court, and not the Panel, must decide whether there was ever an agreement to arbitrate between Tres Tech and Carefusion Corporation. Carefusion Corporation also alleges that it never appeared before the Panel. Tres Tech responds that Carefusion Corporation has waived its jurisdictional argument, because it waited until it received an unfavorable decision to ever raise the issue of the Panel's jurisdiction. Tres Tech argues further that even if Carefusion Corporation has not waived its jurisdictional objection, the evidence before the Court permits a finding that Carefusion Corporation was a signatory to the Agreement.

4

### i.     Carefusion Corporation Waived Its Jurisdictional Objection.

Carefusion Corporation relies on *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) for the proposition that a court, not an arbitrator, must "decide in the first instance" whether an agreement to arbitrate exists. That reliance is misplaced. As Carefusion Corporation points out, the Fifth Circuit stated that the issue of whether the parties ever entered an arbitration agreement is a question the district court must first decide, not the arbitrators. *Id.* at 317. When a party contests the existence of an agreement to arbitrate, no deference is owed to the arbitration panel's decision regarding its own jurisdiction. *Id.*

Carefusion Corporation argues that *DK Joint Venture 1* controls and this Court must determine whether an agreement to arbitrate ever existed. As Carefusion Corporation views the facts of this case, it is not a signatory to the Royalty Agreement and the Court must vacate the Award. This reliance on *DK Joint Venture 1* is a mirage. It is appealing until closer observation reveals Carefusion Corporation never raised the issue of jurisdiction until after the arbitration had concluded and it received an undesirable outcome. This case differs from *DK Joint Venture 1*. The parties resisting jurisdiction of the arbitration panel did so prior to the arbitration in *DK Joint Venture 1*. Resp'ts' Resp. Br. To Claimants' Br. Regarding Ineffective Service of the Arbitration Demand & Lack of Jurisdiction at 10, *DK Joint Venture 1 v. Weyand*, No. 3:07-CV-0509-K (N.D. Tex. July 9, 2007) (Doc. No. 13-2); Defs.' Resp. to Intervener's [sic] Mot. to Stay Arbitration at 3–5, *DK Joint Venture 1 v. Weyand*,

No. 3:07-CV-0509-K (N.D. Tex. Aug. 1, 2007) (Doc. No. 18); Defs.' Mot. to Consider Matters in Abatement, or Alternatively, Mot. to Stay Proceeding, Resp. to Pls.' Mot. for Confirmation of Arbitration Award, Mot. for Vacatur of Arbitration Award, & Mot. to Modify Arbitration Award at 18–24, *DK Joint Venture 1 v. Weyand*, No. 3:09-CV-0628-K (N.D. Tex. Apr. 24, 2009) (Doc. No. 3).

Despite AAA rules requiring it file all objections to jurisdiction no later than filing an answering statement, Carefusion Corporation's only objection before the Panel was one of venue. App. to Carefusion Corporation's Resp. to Pet'r's Mot. to Confirm Am. Arbitration Award, and Cross-Mot. to Vacate Award at 23–24 (Doc. No. 8). Carefusion Corporation answered the arbitration demand. *Id.* at 31. Carefusion Corporation never took any action before the Panel or the AAA to request a change in respondents, nor did the AAA take such action. App. in Support of Tres Tech's Mot. to Confirm Am. Arbitration Award & Reply in Support Thereof at 232 (Doc. No. 2-2). Though invited by the Panel to do so, Carefusion Corporation never objected when the Panel issued a scheduling order captioned "Tres Tech Corporation and Carefusion Corporation." *Id.* Finally, though the AAA Rules provide a 20-day window post award to correct clerical, typographical, or computational errors in an award, Carefusion Corporation never requested such relief despite the Award clearly issuing against it. *Id.* at 234. In short, despite numerous opportunities to raise this jurisdictional objection, Carefusion Corporation told no one of this concern until an unfavorable decision had been levied against it. Because Carefusion Corporation did

not take a single action to preserve its jurisdictional objection, the Court disagrees that *DK Joint Venture 1* applies in this instance. Rather, the Court is of the opinion that Carefusion Corporation waived its jurisdictional objection.

A party must challenge the authority of an arbitrator to resolve a dispute before arbitration occurs, not after. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980). "The proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the court for a stay of arbitration." *Garner v. MBNA Am. Bank, N.A.*, No. 3:05-CV-1029-R, 2006 WL 2354939, at *3 (N.D. Tex. Aug. 14, 2006). A party may also preserve its jurisdictional objection by first raising it with the arbitrator. *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42–43 (3d Cir. 1985). The reason a party must make a clear, timely objection to either the court or the arbitrator is so that the party's rights may be protected. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002). Failure to do so amounts to waiver of the objection. *Id.; Teamsters Local Union No. 764*, 770 F.2d at 42–43.

The Court agrees with the Panel's findings on the issue of waiver. As discussed above, not once did Carefusion Corporation raise the issue of the Panel's jurisdiction to hear this case. Carefusion Corporation was the only respondent named in the demand for arbitration, it appeared, and it filed an answering statement. The only objection in the answer was to the venue of the arbitration. Despite an invitation by the Panel, Carefusion Corporation did not raise the jurisdictional issue in response to

a scheduling order naming Carefusion Corporation in the caption. In fact, the Panel was presented evidence that Carefusion Corporation was the successor-in-interest to the original signatory. No motion to amend a typographical or clerical error was filed when the Award issued against Carefusion Corporation. It also took no action to stay the arbitration. The only thing Carefusion Corporation claims to have done to bring this issue up for consideration is include a parenthetical statement that it had been "wrongly named" in the demand. The Court agrees with the Panel that this brief, vague statement was insufficient to put anyone on notice that Carefusion Corporation challenged the Panel's jurisdiction to hear these claims. Carefusion Corporation seems to invite the Court to interpret "(wrongly named as Carefusion Corporation in the demand)" as "we did not sign an arbitration agreement and we did not agree to arbitrate these claims." The Court does not agree that Carefusion Corporation's parenthetical statement means so much. The statement was simply ineffective to put anyone on notice that Carefusion Corporation challenged the existence of an arbitration agreement.

Carefusion Corporation had ample opportunity to raise its objection and preserve the issue for consideration by the Court, but did not effectively do so. This Court will not now permit it to get a second bite at the apple after receiving an unfavorable ruling. *See Pike v. Freeman*, 266 F.3d 78, 89 (2d Cir. 2001) ("Arbitration is not a trial run in which a party may sit quietly by without raising pertinent issues, wait to see if the result is in his favor and then seek judicial relief as an

afterthought . . . ."); *Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983)(per curiam) ("It would be unreasonable and unjust to allow [defendant] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months . . . ."). As such, the Court finds that Carefusion Corporation has waived its objection that it is a non-signatory outside the jurisdiction of the Panel.

### ii.    Carefusion Corporation Is Bound by the Agreement as a Successor-in-Interest to SMCC.

Even if Carefusion Corporation did not waive its objection to the jurisdiction of the Panel, the Court finds that Carefusion Corporation is still bound by the arbitration clause because it has assumed the benefits and the duties under the Agreement as a successor-in-interest to SensorMedics, the initial signatory who did agree to arbitrate these claims. Paragraph X.2 of the Agreement states that it "shall be binding upon and inure to the benefit of the parties and their respective successors and assigns." App. in Support of Tres Tech's Mot. to Confirm Am. Arbitration Award & Reply in Support Thereof at 42 (Doc. No. 2-1). Under California law that governs the interpretation of the Agreement, successors-in-interest are "bound by the construction reasonably applicable to the original parties. *Spector v. Nat'l Pictures Corp.*, 20 Cal. Rptr. 307, 312 (Cal. Dist. Ct. App. 1962). The question, then, is whether Carefusion Corporation is a successor-in-interest to SensorMedics. Because the Court finds that it is a successor-in-interest to SensorMedics, Carefusion Corporation is bound by the arbitration provision in the Agreement.

The Court's analysis begins with Carefusion Corporation's own arbitration evidence. Carefusion Corporation tendered two documents to the Panel purporting to show the transfer of assets from SensorMedics to its present-day ownership. App. in Support of Tres Tech's Mot. to Confirm Am. Arbitration Award & Reply in Support Thereof at 233. The first document tracked 100% of SensorMedics' assets to Carefusion 202, Inc., but was withdrawn from evidence at Carefusion Corporation's request. *Id.* In its place, Carefusion Corporation filed an edited version of this document ("the Corporate History") showing the same sequence of ownership of all of SensorMedic's assets, but the terminal owner is listed as Carefusion Corporation. *Id.* at 233–34; Tres Tech's Second App. at 040 (Doc. No. 11). This unchallenged documentary evidence, tendered by Carefusion Corporation, establishes that 100% of the assets of SensorMedics, including the rights and obligations under the Agreement, passed to Carefusion Corporation and not Carefusion 202, Inc.

In addition to the Corporate History, the Court looks to the language of the Agreement to bolster its conclusion that Carefusion Corporation is, in fact, a successor-in-interest to SensorMedics. The Agreement contemplates royalty payments for the sale and rental of specific High Frequency Ventilators. App. in Support of Tres Tech's Mot. to Confirm Am. Arbitration Award & Reply in Support Thereof at 35–37 (Doc. No. 2-1). The ventilators covered by the Agreement are at the center of the dispute currently before the Court. *Id.* at 233. In its briefing before the Panel, Carefusion Corporation stated as fact that "Carefusion is a publicly traded

(NYSE:CFN) diversified medical device company with over 14,000 employees worldwide . . . [that] sells critical care ventilators, like the 3100A and 3100B HFOV models at issue in this case." Tres Tech's Second App. at 43 (Doc. No. 11). According to its own Corporate History the corporation identified as "CFN" is Carefusion Corporation, not Carefusion 202, Inc. *Id.* at 40.

Given both of these documents are its own evidence, Carefusion Corporation's argument that it is not a successor-in-interest to SensorMedics is belied by its own evidence. Its only counterargument against this evidence is that it is insufficient to "countervail a stipulated fact between the parties." Reply Br. in Support of Resp't Carefusion Corp.'s Cross-Mot. to Vacate Award at 3 (Doc. No. 14). The Court finds this argument unpersuasive. The parties did, in fact, stipulate that SensorMedics "is a predecessor-in-interest of Carefusion [202, Inc.]." App. to Carefusion Corp.'s Resp. to Pet'r's Mot. to Confirm Amended Arbitration Award, and Cross-Mot. to Vacate Award at 49 (Doc. No. 8) (emphasis added). Carefusion Corporation's argument that this statement precludes the Court from relying on the Corporate History and Carefusion Corporation's own representations to the Panel goes too far.

A district court may disregard a stipulation between parties if "accepting them would be manifestly unjust or if the evidence contrary to the stipulation [is] substantial." *United States v. Ret. Servs. Grp.*, 302 F.3d 425, 430 (5th Cir. 2002). In *Retirement Services Group*, the Fifth Circuit reversed a district court and disregarded a stipulation of the parties based on the clear, contradictory language of one affidavit

and the equivocal language of another. *Id.* at 431. Here, as detailed above, the evidence contrary to the stipulation is more substantial than in *Retirement Services Group*. It is directly contradictory to the stipulation and was tendered by the very party seeking to rely on that stipulation. Given the weight of the contrary evidence in the record, the Court disregards the stipulation regarding SensorMedic's successor-in-interest. Because the Court disregards the stipulation, and based on the evidence submitted to the Panel by Carefusion Corporation itself, the Court finds that Carefusion Corporation is bound by the arbitration clause in the Agreement as the successor-in-interest to SensorMedics, an original signatory to the Agreement.

### iii.   Carefusion Corporation Appeared at the Arbitration.

In its final jurisdictional argument, Carefusion Corporation argues that it never appeared and arbitrated the dispute before the Panel. The Court finds this argument completely devoid of merit. Carefusion Corporation's argument seems to rest on the premise that a respondent in arbitration can unilaterally remove itself from a dispute by changing the named party in the caption of its answering statement. Reply Br. in Support of Resp't Carefusion Corp.'s Cross-Mot. to Vacate Award at 4 (Doc. No. 14). Carefusion Corporation offers no legal support for this argument, and the Court sees no logical weight to the argument that a party can sidestep a claimant's grievance in such a manner. Carefusion Corporation's name appears in the signature block of the answering statement in reply to the claim filed against it by Tres Tech. App. to Carefusion Corp.'s Resp. to Pet'r's Mot. to Confirm Am. Arbitration Award, & Cross-

Mot. to Vacate Award at 31 (Doc. No. 8). Carefusion Corporation attempts to cast this aside as merely a typographical error with no bearing on the issue of whether it appeared before the Panel. The Court finds this situation to be analogous to making a general appearance in federal court.

A party generally appears when it invokes the judgment of the court on any non-jurisdictional issue. *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002). "[T]he focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties." *Id.* Here, Carefusion Corporation, the named respondent, signed an answering statement in response to Tres Tech's demand for arbitration. The answering statement includes counterclaims against Tres Tech. App. to Carefusion Corp.'s Resp. to Pet'r's Mot. to Confirm Am. Arbitration Award, & Cross-Mot. to Vacate Award at 29–30 (Doc. No. 8). The inclusion of these counterclaims was an invitation for the Panel to enter a judgment on a substantive, non-jurisdictional issue.

That invocation of the Panel's judgment was signed by Howard Wisnia above a signature block naming Carefusion Corporation. Mr. Wisnia, Carefusion Corporation's lead attorney, is clearly an agent of Carefusion Corporation. *Maracich v. Spears*, 133 S. Ct. 2191, 2201 (2013) ("It is no less true than trite that lawyers must operate in a three-fold capacity, as self-employed businessmen as it were, *as trusted agents of their clients*, and as assistants to the court in search of a just solution to disputes.") (emphasis added); *Yanchor v. Kagan*, 99 Cal. Rptr. 367, 370 (Cal. Ct. App. 1971) ("An attorney is an agent of his client, and the attorney-client relationship is

governed by the rules applicable to the relationship of principal and agent in general.") (internal citations omitted). When an agent signs a document on behalf of a disclosed principal the principal is bound as if it had signed that document personally. *Yanchor*, 99 Cal. Rptr. at 370 ("[T]he client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied), or his apparent, or ostensible, authority.") (internal citations omitted); *see DK Joint Venture 1*, 649 F.3d at 315.

Mr. Wisnia serves as Carefusion Corporation's attorney. By hiring Mr. Wisnia in this capacity Carefusion Corporation has, at the very least, clothed him in apparent authority to sign pleadings on its behalf. Mr. Wisnia's signature appears above the name "Carefusion Corporation" in the answering statement submitted to the Panel. Had Mr. Wisnia taken these exact actions in federal court, Carefusion Corporation would have clearly made a general appearance. For the same reasons, the Court finds that Carefusion Corporation voluntarily appeared and arbitrated this claim before the Panel.

### B.   The Arbitration Award Will Not be Vacated.

Having found that the Panel properly exercised jurisdiction over Carefusion Corporation, the Court turns to the issue of whether the Award it issued should be vacated for any of the following reasons: (1) the Panel exceeded its authority because it ignored the contract and the applicable law in finding no patent misuse as alleged by Carefusion Corporation's counterclaim; (2) the Panel exceeded its authority by

14

erroneously considering parol evidence; and (3) the Panel exceeded its authority by erroneously reforming the contract. At the core, each of these arguments is that the Panel exceeded its authority and "dispense[d] [its] own brand of industrial justice . . . ." *See Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

When a party seeks confirmation of an arbitration award, the Court gives deference to the decisions of the arbitrators. *Glover v. IBP, Inc.*, 334 F.3d 471, 473 (5th Cir. 2003). Review of such an award is extraordinarily narrow. *Id.* at 473–74. Even if the court disagrees with the arbitrators' interpretation of a contract, the award must be affirmed if the decision "draws its essence from the contract." *Id.* At 475. "To draw its essence from the contract, an arbitrator's award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter and purpose of the agreement." *Id.* "The award must, in some logical way, be derived from the wording and purpose of the contract." The Court may vacate an award if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a) ("Section 10(a)"). Because it is not based on Section 10(a), the Fifth Circuit no longer recognizes manifest disregard for the law as a basis to vacate an arbitration award. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009).

Carefusion Corporation relies on the fourth avenue for vacation of an award. It argues that the Panel exceeded its authority by not applying what Carefusion Corporation calls "bright-line rules" on patent misuse, considering parol evidence to interpret the Agreement, and in allegedly reforming the Agreement. Br. in Support of Carefusion Corp.'s Resp. to Tres Tech Corp.'s Mot. to Confirm Amended Arbitration Award & Cross-Mot. to Vacate Award at 19–24 (Doc. No. 7). Relying on *Stolt-Nielsen*, 559 U.S. at 671, Carefusion Corporation argues that each of these is an example of the Panel dispensing its own brand of industrial justice. This reliance is misplaced. While clinging to this singular phrase from *Stolt-Nielsen*, Carefusion Corporation ignores the directive from the Supreme Court as to the limited nature of the relief it seeks. Even if it could show the Panel made a serious error, Carefusion Corporation would still not clear its "high hurdle." *Id.* In order for the Panel to have exceeded its power, Carefusion Corporation must show that the Panel did something other than interpret and enforce the Agreement. *See id.* at 672. In *Stolt-Nielsen*, the Supreme Court found that the arbitration panel exceeded its authority by "impos[ing] its own view of sound policy regarding class arbitration." *Id.* The Panel did nothing similar to that action in this case.

In its first attempt to show the Panel exceeded its authority, Carefusion Corporation takes issue with the decision regarding patent misuse. Carefusion Corporation alleges that the Panel ignored "bright-line rules" and that its factual findings require a ruling that the Agreement is *per se* unenforceable. Even if the

Panel's ruling on this point was erroneous, it does not rise to the level of exceeding the Panel's authority. The Panel considered Carefusion Corporation's argument on this point extensively. In fact, 25 percent of the Award is devoted to analyzing the case law Carefusion Corporation relies on and distinguishing it from this case. App. in Support of Tres Tech's Mot. to Confirm Am. Arbitration Award & Reply in Support Thereof at 53–57 (Doc. No. 2-1). The Panel found that *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) and its progeny were inapplicable to this case because Carefusion Corporation's predecessor already owned all rights to the patents at issue, therefore Tres Tech could not have used the leverage of the patent monopoly to extract a better deal. *Id.* at 53. Though the Agreement did not reduce the royalty payment on expiration of the patents, those royalties were reduced immediately. *Id.* at 54. Carefusion Corporation's predecessor, not Tres Tech, sought the change in royalty amount and duration. *Id.* In short, the Panel found that this royalty was not a patent royalty, but a simple contractual bargain that used the patent lifespan as a "convenient marker of time." *Id.* at 53–54. The Court finds that this meticulous, unanimous decision of the Panel draws its essence from the Agreement and does not exceed the Panel's authority. The Panel reviewed the law and applied it. It did not base its decision on public policy or otherwise improperly act as a common law court. *See Stolt-Nielsen*, 559 U.S. at 673–74.

Carefusion Corporation's second argument that the Award should be vacated is that the Panel exceeded its authority by considering parol evidence to interpret the

contract. As with its first argument, it is not enough for Carefusion Corporation to show that the Panel committed error in considering this evidence. Carefusion Corporation asserts that the Panel erred by failing to explicitly make the "key threshold determination" that the Agreement was reasonably susceptible to Tres Tech's proposed interpretation. The California Civil Code instructs that "the language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638 (West 2014). "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." *Id.* § 1647. "Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purposes." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 44 P.2d 641, 645 (Cal. 1968). "Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." *Id.*

The Panel followed California contract law in evaluating the terms of the Agreement. The Panel first looked to the language of the disputed clause and could not determine its meaning. Next, the Panel looked to other portions of the Agreement. When this still did not provide an answer, the Panel found the Agreement to be ambiguous and turned to parol evidence. Therefore, the Panel did not err in considering parol evidence to interpret the Agreement. Even if the Panel

had committed error in considering this parol evidence, this finding would not result in vacation of the Award. To rule otherwise would permit a court to vacate an arbitrator's decision based on a simple evidentiary error, a result that is clearly contrary to Section 10(a). *See id.*; *Citigroup Global Mkts., Inc.*, 562 F.3d at 353.

Carefusion Corporation's last point is that the Panel exceeded its authority by improperly reforming the Agreement. Carefusion Corporation argues that the Panel reformed the Agreement by giving effect to the intentions of the parties as opposed to interpreting the language of the Agreement. Under California law, a court may revise a contract to properly reflect the intention of the parties if there is fraud or mistake involved in the drafting of the agreement. Cal. Civ. Code § 3399. As with Carefusion Corporation's previous arguments, the Court finds that the Panel did not exceed its authority by improperly reforming the Agreement. As has already been stated, the Panel considered the disputed language, then looked to the rest of the Agreement for guidance, and finally turned to parol evidence to interpret the Agreement. This process of interpreting disputed language and the end result is not a reformation. It was simply the Panel's resolution of disputed language found within the Agreement. The Panel did not exceed its authority in interpreting this language; rather, it did exactly what it was called to do by the parties.

## II.  Tres Tech's Motion to Confirm is Granted.

The Federal Arbitration Act requires a court to confirm an arbitration award unless it is vacated, modified, or corrected. 9 U.S.C. § 9. Here, Tres Tech has

presented evidence of the Award and Supplemental Award, and Carefusion Corporation has failed to show any reason why the awards should be vacated under Section 10 or modified in any other way. Therefore, pursuant to 9 U.S.C. § 9, the Court **GRANTS** Tres Tech's Motion to Confirm Amended Arbitration Award. (Doc. No. 1).

In addition to confirmation of the Award and Supplemental Award, Tres Tech seeks post-award, prejudgment interest and post judgment interest. Though neither the Award nor the Supplemental Award provide for interest on the award, this does not prevent the Court from granting Tres Tech's request. *See McVay v. Halliburton Energy Servs., Inc.*, 688 F. Supp. 2d 556, 564 (N.D. Tex. 2010). Because this is a diversity case, Texas law determines the award of prejudgment interest, while federal law controls on the award of post-judgment interest. *Wash. Mut. Bank v. Crest Mortg. Co.*, 418 F. Supp. 2d 860, 862 (N.D. Tex. 2006) (citing *Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002)).

As a preliminary matter, the Court must decide which state's law to apply to determine the award of post-award, prejudgment interest. *Id.* Texas law typically enforces contractual choice-of-law provisions. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Because the Agreement calls for California law to govern, the Court applies California law. In an action on a contractual obligation, a party is entitled to pre-judgment interest as a matter of right. *Pierotti v. Torian*, 96 Cal. Rptr. 2d 553, 560 (Cal. Ct. App. 2000); Cal. Civ. Code. § 3287 (West 2014). This entitlement also

applies to a successful party to arbitration. *Pierotti*, 96 Cal. Rptr. 2d at 560. Because Tres Tech has shown it is entitled to post-award, prejudgment interest, the Court grants its request for prejudgment interest at a rate of 10 percent per annum from April 13, 2013 to the date of this judgment. Cal. Civ. Code § 3289 (West 2014).

As noted above, post-judgment interest is determined by federal law. *Boston Old Colony Ins. Co.*, 288 F.3d at 234. The federal post-judgment interest rate is governed by 28 U.S.C. § 1961(a). The post-judgment interest rate as of the date of this judgment is 0.09 percent. Therefore, the Court awards post-judgment interest from this date forward of 0.09 percent.

## III.  Conclusion

For the reasons stated above, Tres Tech's Motion to Confirm Amended Arbitration Award (Doc. No. 1) is **GRANTED** and Carefusion Corporation's Cross-Motion to Vacate Award (Doc. No. 6) is **DENIED**. The Court **CONFIRMS** the Award and Supplemental Award. The Court also awards post-award, prejudgment interest at a rate of 10 percent per year from April 13, 2013 to the date of this judgment. The Court also awards post-judgment interest at a rate of 0.09 percent from the date of this judgment.

**SO ORDERED.**

Signed May 29th, 2014

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE